UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAMES WINBRONE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   2:15-cr-00063-DBH-1 |
| | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent | ) |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 111.) Following a jury-waived trial, Petitioner was convicted of one count of aiding and abetting the possession with intent to distribute heroin, one count of distribution of cocaine, and one count of possession with intent to distribute heroin; the Court sentenced Petitioner to 252 months in prison. (Judgment, ECF No. 87.)

Petitioner claims that his trial and appellate attorneys provided ineffective assistance of counsel. (Motion at 5–15; First Amended Motion at 1–4, ECF No. 129; Second Amended Motion at 1–16, ECF No. 131; Third Amended Motion at 3–21, ECF No. 132.) The Government requests summary dismissal of the motion. (Response, ECF No. 144.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

State and federal law enforcement began investigating Petitioner in 2013. (Presentence Investigation Report (PSR) ¶ 6; Trial Transcript at 104–05, ECF Nos. 66, 67). In April 2014, officers arrested one of Petitioner's associates, Marquis Aiken, when Aiken attempted to sell heroin to an informant. (Trial Transcript at 121–26.)  At trial, the Government presented text messages and a recorded phone call in which Petitioner and the informant arranged the transaction, and the Government played a recorded phone call between Petitioner and another suspect wherein Petitioner reacted to the arrest and concluded that the informant was to blame for the arrest. (*Id.* at 194–214, 220–26, 276).

In October 2014, law enforcement worked with another informant to coordinate a controlled buy of cocaine from Petitioner. (*Id.* at 226–36.) The informant testified at trial, and the Government presented text messages and recorded phone calls between the informant and Petitioner that occurred before and shortly after the transaction. (*Id.* at 226–44; 341–56.)

In January 2015, law enforcement officers outside Petitioner's apartment noticed a vehicle whose last known operator was wanted on outstanding warrants and observed two men exit the apartment building and enter the vehicle. (*Id.* at 245–50.) The officers followed, stopped the vehicle, arrested the driver on the outstanding warrants, and arrested Petitioner, who was also wanted on an outstanding warrant. (*Id.*) Officers entered the third-floor apartment, swept the inside for individuals, and secured the apartment while they obtained a search warrant. (*Id.* 251–253.) A subsequent search of Petitioner's apartment revealed significant quantities of cocaine hydrochloride, heroine, and cash. (*Id.*

2

253–58.)  At trial, the Government introduced additional text messages and phone records, and several witnesses testified about Petitioner's phones, apartment, and efforts to procure controlled substances in New York, transport them to Maine, and sell them in 2014 and 2015.  (*See e.g.*, *id.* 34–56, 154–74, 178–86, 385–425, 441–71.)

In March 2015, Petitioner was indicted on one count of aiding and abetting the possession with intent to distribute heroin, one count of distribution of cocaine, and one count of possession with intent to distribute heroin.  (Indictment, ECF No. 7.)[1]  Following a two-day bench trial in September 2015, Petitioner was convicted on the three counts.  (ECF Nos. 51–54.)   In April 2016, the Court sentenced Petitioner to 252 months imprisonment.  (Judgment, ECF No. 87.)  The First Circuit affirmed the judgment in August 2017.  (Judgment of the Court of Appeals, ECF No. 99.)

## DISCUSSION

**A.     Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

---

[1] The indictment originally contained an additional count, which was subsequently dismissed.  (Order, ECF No. 50.)

*"[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard

4

of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145

(1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

## B.   Ineffective Assistance of Counsel [2]

### 1.   Sufficiency of the Indictment

Petitioner argues that his trial and appellate counsel provided ineffective assistance because counsel failed to challenge the indictment on the grounds that: (1) the indictment did not charge the person he was accused of aiding and abetting in the first count, (Motion at 5; First Amended Motion at 1–2; Second Amended Motion at 13–15; ), (2) the indictment was allegedly not properly brought before a grand jury, (Motion at 9–10), (3) the indictment did not specifically allege constructive possession as opposed to actual possession, (Motion at 10–11), and (4) the indictment did not contain his full name. (Motion at 13). A variance between the indictment and the evidence at trial "is material

---

[2] Petitioner focuses his request for relief on ineffective assistance of counsel. To the extent that some of his arguments could be fairly read to assert underlying substantive claims, the claims are procedurally defaulted because Petitioner did not raise them on appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002) ("a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence"). The only potential cause to excuse the procedural default is ineffective assistance of counsel; thus, the ineffective assistance standard governs under either interpretation of Petitioner's filings.

and reversible only if it has affected the defendant's 'substantial rights': to be informed of the charges; and to prevent a second prosecution for the same offense." *United States v. Vavlitis*, 9 F.3d 206, 210 (1st Cir. 1993); *see also*, *Hamling v. United States*, 418 U.S. 87, 117 (1974).

There is no legal requirement for the Government to include the name of the principal in an indictment for aiding and abetting, and Petitioner cannot show that he was prejudiced by the omission of that detail. *See United States v. Somers*, 950 F.2d 1279, 1283 (7th Cir. 1991) ("In order to convict a defendant as an aider or abettor under § 2, it has never been necessary to convict or even identify the principal, provided there is sufficient evidence to establish the commission of the substantive offense"). Petitioner's argument that an indictment must specifically allege constructive possession for the Government to proceed on that theory when the indictment simply alleged possession without greater specificity is unsupported by any legal authority. *See United States v. Graham*, 408 F. App'x 976, 980 (6th Cir. 2011) ("Because the indictment's terms are consistent with either actually possessing the ammunition or constructively possessing it, the indictment could not have been constructively amended" by constructive possession evidence). Petitioner's contention that the matter was not presented to the grand jury is also unsupported by the record. Finally, because the record demonstrates that Petitioner used the name charged in the indictment, the failure to include a more complete or proper legal name was not a material defect. *See*, *United States v. Brown*, No. 1:09-cr-30-GZS, 2009 WL 929919, at *3 (D.N.H. Apr. 3, 2009) (Singal, J.) (rejecting legal name argument).

7

Because Petitioner has not established any material defect in the indictment, he has not shown that counsel performed deficiently by not challenging the indictment or that he was prejudiced by his counsels' decisions concerning the indictment.

### 2.  Witnesses Not Called to Testify

Petitioner argues that his trial counsel provided ineffective assistance when he did not call Aiken and one of the informants as witnesses or challenge their absence under the Confrontation Clause. (Motion at 6–8; First Amended Motion at 4; Second Amended Motion 11–13.) The Confrontation Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to be confronted with the witnesses against the defendant prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).

Petitioner's right to confront his accusers was not violated because neither of the individuals he identifies provided any testimonial statements at trial. Although some of the witnesses at trial offered statements about Aiken, the record does not reflect that the Government introduced or relied on the truth of any statements from Aiken at trial. In addition, while certain statements of the confidential informant were introduced at trial in text messages and recorded phone conversations, the recordings provided context for the relevant content for the factfinder (i.e., Petitioner's statements). In other words, the informant's assertions that were included in the recordings were not offered for the truth

8

of the assertions and thus did not constitute hearsay and did not offend the Confrontation Clause. *See id.* at 59 n.9 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted").[3]

"While the Confrontation Clause guarantees a defendant the right to be confronted with the witnesses 'against him,' the Compulsory Process Clause guarantees a defendant the right to call witnesses 'in his favor.'" *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (2009) (quoting U.S. Const., amend. VI). Trial counsel's decision not to call the witnesses to testify at trial appears to have been a considered tactical decision. *See United States v. Ortiz Oliveras*, 717 F.2d 1, 3 (1st Cir. 1983) (reasonable "tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance"). Although Petitioner speculates that Aiken and the informant would have provided testimony favorable to his case, a reasonable attorney could have concluded that any utility of such testimony was outweighed by other concerns, such as limited credibility of those individuals or the risk that harmful information would be revealed on cross-examination. Furthermore, if counsel had called Aiken to testify, counsel's attempt to argue that Aiken's absence at trial reflects the weakness in the Government's case would have been undermined.[4]

---

[3] Petitioner's objection to the brief testimony of one agent about a second agent advising the agent that two males had exited the building fails for the same reason. (Second Amended Motion at 12–13.) The out-of-court statement was not admitted for the truth of the matter asserted and did not prejudice Petitioner.

[4] Petitioner's argument regarding the existence of an additional recording that was not played at trial fails for the same reason. (Motion at 14.) While it may be reasonable to infer from its absence within the Government's case in chief that the recording lacks clear incriminating evidence, Petitioner has not provided any reason to conclude that it included any exonerating evidence. Because there is no reason to conclude the recording had significant utility to the defense, Petitioner has not shown that his attorney acted unreasonably by not introducing it.

Because none of the evidence introduced at trial violated the Confrontation Clause, and because counsel's decision not to call witnesses was reasonable under the circumstances, Petitioner has not shown that counsel performed deficiently or that he was prejudiced by his counsels' decisions at trial or on appeal.

### 3. Recordings, Cell Phones, and Cooperating Witnesses

Petitioner asserts that he was provided ineffective assistance at trial and on appeal because his attorneys failed to secure the suppression or exclusion of evidence against him, including the recordings and cell phone evidence, (Motion at 12, 14–15; Second Amended Motion at 3–9), as well as the testimony of several witnesses. (Motion at 15.)

Petitioner's Fourth Amendment argument lacks merit because the other party consented to monitoring by a law enforcement official for each of the non-wiretap conversations. *See United States v. Miller,* 720 F.2d 227, 228 (1st Cir. 1983) (Listening in or recording a conversation "with the consent of one party, does not violate the rights of the other party under the fourth amendment" or statute because "defendant impliedly accepted the risk that his conversation might be overheard on an extension and/or recorded"). Because there was no signed consent form or other similar evidence, Petitioner contends that the Government did not prove that the other participants consented to the recording. The Government is not required to produce a signed consent. Consent can be inferred. *See Williams v. Poulos*, 11 F.3d 271, 281 (1st Cir. 1993) (consent in this context may be "inferred from surrounding circumstances indicating that the party knowingly agreed to the surveillance") (quotations and emphasis omitted). Here, given the nature of

the informants' cooperation and the physical presence and direction of a law enforcement officer, the circumstances supported a finding of implied consent.

Petitioner's authentication arguments also fail. The record contains sufficient evidence connecting Petitioner to the phone numbers at issue. Indeed, the record includes several of Petitioner's own statements listing the relevant phone numbers as his own, and the opinion of several witnesses that it was Petitioner's voice on the recordings. *See generally*, Fed. R. Evid. 901(b)(5) (permitting authentication of evidence by "[a]n opinion identifying a person's voice--whether heard firsthand or through mechanical or electronic transmission or recording--based on hearing the voice at any time under circumstances that connect it with the alleged speaker").

Petitioner objects to the relevance of the testimony of three of the Government witnesses, but he does not point to any portion of the testimony in particular. Instead, Petitioner contends the testimony as whole was irrelevant because the witnesses did not claim to have observed personally the alleged illegal transactions. Petitioner's argument fails because the legal standard for relevance does not require direct eye-witness testimony of the crime. *See generally*, Fed. R. Evid. 401 (evidence is relevant if it has any tendency to make a fact more or less probable and that fact is of consequence); *see also*, *United States v. Maravilla*, 907 F.2d 216, 222 (1st Cir. 1990) ("No one claimed that this particular piece of evidence proved guilt. It was merely one piece of evidence among many"); *United States v. Yazzie*, 188 F.3d 1178, 1189 (10th Cir. 1999) (discussing analogy that each piece of evidence need only be a single brick in a larger wall of evidence).

Because none of Petitioner's argument would have justified suppression or exclusion of the challenged evidence, Petitioner has not shown that counsel performed deficiently or that he was prejudiced by counsels' decisions.

### 4. Vehicle Stop and Apartment Searches

Petitioner contends that he was provided ineffective assistance of counsel at trial and on appeal because his attorneys failed to secure the suppression of evidence resulting from the search of the vehicle and apartment after Petitioner's arrest. (Motion at 13, 14; First Amended Motion at 3–4; Second Amended Motion at 1–2, 10; Third Amended Motion at 6–21.)

Contrary to Petitioner's assumption regarding the propriety of a traffic stop, the federal agents did not rely on a traffic violation to stop the vehicle; the agents relied on their knowledge that the last known operator had outstanding warrants for his arrest. *Cf. Kansas v. Glover*, 140 S. Ct. 1183, 1186 (2020) (investigative traffic stop of a vehicle is reasonable when information indicates that the owner had license revoked and there is no information negating an inference that the owner is the driver).[5] The record also reflects that the agents likely already possessed probable cause to arrest Petitioner at that time based on the results of their investigation that later led to the first two charges in the indictment, but even if the agents did not have probable cause to arrest on those charges, the arrest did

---

[5] Petitioner also cites *Arizona v. Gant*, 556 U.S. 332 (2009), which limited officers' ability to search automobiles incident to arrest without further suspicion, but because no evidence from the automobile was introduced at trial, there is no possible error or prejudice on that issue.

not offend the Fourth Amendment because Petitioner also had an outstanding warrant for his arrest.[6]

Petitioner has not established that law enforcement officials violated the Fourth Amendment when they entered the apartment briefly to sweep for individuals who might destroy evidence in the immediate aftermath of Petitioner's arrest. The record lacks any evidence to suggest that the agents searched any more than was necessary to secure the apartment while they pursued a search warrant; the agents had cause to believe from their prior investigative efforts that Petitioner used associates to distribute controlled substances; and any associate that might have remained inside could have seen the agents arrest the two individuals shortly after they left the apartment. Petitioner has not shown that the officers acted unreasonably under the circumstances. *See e.g.*, *United States v. Samboy*, 433 F.3d 154, 158 (1st Cir. 2005) (exception to the warrant requirement exists when there are exigent circumstances, including "objectively reasonable basis for concluding that the loss or destruction of evidence is likely to occur"); *United States v. Caballero*, No. 16-CR-30034-MGM, 2018 WL 5281744, at *7 (D. Mass. Oct. 24, 2018) ("For example, [the

---

[6] Because Petitioner initially gave a false name to the agents, the record is not entirely clear on precisely when the stop became an arrest. Even if Petitioner was temporarily detained for a period before he was arrested, it was not unreasonable for counsel to decline to press the issue at trial, given that courts have permitted officers to stop suspects for similar periods of time while diligently investigating. *See e.g.*, *United States v. McCarthy*, 77 F.3d 522, 531 (1st Cir. 1996); *United States v. Ramdihall*, 859 F.3d 80, 88 (1st Cir. 2017). To the extent that Petitioner asserts an officer told him that he was being detained or arrested for different reasons, and to the extent that Petitioner argues that there was something improper because he was arrested on state charges that did not ultimately result in prosecution, such circumstances would not control the Fourth Amendment analysis because there is no requirement that the offense that ultimately justifies arrest or prosecution be based on the same conduct as the offense the arresting officer initially identified. *See Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004). There is also no legal authority to support Petitioner's challenge to the addition of drug charges several hours after his arrest.

agent] would have been justified in believing that securing the premises from the outside or arresting [a suspect] on his way out of the house would have alerted those within to police presence and caused the destruction of evidence").[7]

Petitioner also maintains that the search warrant for the apartment was invalid because the agent who applied for the search warrant committed perjury or otherwise manipulated the facts supporting the determination that there was probable cause to search the apartment. A review of the record does not reveal any support for Petitioner's argument. For example, Petitioner maintains the agent falsely asserted that the agent presented the results of the agent's investigation to a prosecutor because Petitioner was told that he was being arrested on an outstanding warrant, yet the drug charges were added several hours later. The facts, however, are not contradictory, as a suspect could be arrested for one reason while being investigated and ultimately charged and prosecuted for other reasons. *See Devenpeck*, 543 U.S. at 153–54. Because Petitioner's argument is based on speculation, he has not established a sufficient likelihood that defense counsel would have been able to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" or that any such "false statement [was] necessary to the finding of probable cause . . . ." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

---

[7] A reasonable officer's perception of the potential for evidence destruction could also have been heightened if Petitioner was utilizing his phone to alert others of his situation while he was detained, which is consistent with his assertion that he was posting on social media while he was detained.

14

Because Petitioner has not shown that he would have been entitled to a hearing or the subsequent suppression of the evidence resulting from the apartment search, and because he has not established any other underlying Fourth Amendment violation, Petitioner has failed to establish that counsel performed deficiently or that he was prejudiced by counsels' decisions at trial or on appeal.

**C.     First Step Act**

Petitioner seeks relief pursuant to the First Step Act, Pub. L. No. 115-391 (2018). (Second Amended Motion at 16.)  Section 401 of the First Step Act reduced the statutory mandatory minimum penalties pursuant to 21 U.S.C. §§ 841 and 851 for defendants with prior convictions for serious drug felonies or serious violent felonies.  *Id.* § 401(a).  Section 401 does not apply to Petitioner, however, because he did not face a mandatory minimum sentence based on prior convictions.  Furthermore, Congress did not make Section 401 apply retroactively, and thus it does not apply to Petitioner, who was sentenced before December 21, 2018.  *Id.* § 401(c).

Section 404 of the First Step Act made the provisions governing minimum quantities and mandatory minimum sentences for cocaine base in the Fair Sentencing Act of 2010, Pub L. No. 111-220 (2010), apply retroactively to sentences imposed before August 3, 2010.  *See United States v. Smith*, 954 F.3d 446, 446–48 (1st Cir. 2020); *see also, United States v. Pierre*, 372 F. Supp. 3d 17, 18–20 (D.R.I. 2019) (summarizing the history of the penalties for cocaine base).  Section 404 of the First Step Act did not retroactively change the penalties applicable to prisoners like Petitioner, however, because he was sentenced after August 2010, and thus his term of imprisonment would have already

accounted for the changes to the cocaine base minimums. Accordingly, Petitioner is not entitled to relief under § 404 of the First Step Act.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of July, 2020.